**SHUB LAW FIRM LLC**
Jonathan Shub (State Bar No. 237708)
*jshub@shublawyers.com*
Kevin Laukaitis (Pro Hac Vice to file)
*klaukaitis@shublawyers.com*
134 Kings Hwy. E., 2nd Floor
Haddonfield, NJ 08033
Telephone: (856) 772-7200
Facsimile:  (856) 210-9088

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan (Pro Hac Vice to file)
spencer@spencersheehan.com
60 Cuttermill Rd Ste 409
Great Neck, NY 11021
Telephone:  (516) 268-7080
Facsimile:   (516) 234-7800

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOLLY BROWN, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | |
| vs. | **CLASS ACTION COMPLAINT** |
| MARS WRIGLEY CONFECTIONERY US, LLC, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Molly Brown ("Plaintiff"), on behalf of herself and all others similarly situated brings this Class Action Complaint against Mars Wrigley Confectionery US, LLC ("Defendant"), and on the basis of personal knowledge, information and belief, and investigation of counsel, alleges as follows:

1

## INTRODUCTION

1. Defendant manufactures, distributes, markets, labels and sells Vanilla Ice Cream Bars under its Dove brand ("Product").

2. During the Class Period (as defined below), Plaintiff purchased Dove Vanilla Ice Cream Bars in California.

3. Defendant falsely and misleadingly markets its Dove Vanilla Ice Cream Bars to consumers as containing only vanilla flavor from vanilla (i.e. the vanilla plant) and not from non-vanilla sources. Unfortunately for consumers, this is untrue, as much of the vanilla flavor comes from non-vanilla plant sources.

4. In fact, Dove Vanilla Ice Cream Bars have, at most, only a trace of real vanilla and what consumers taste is vanilla flavor provided by non-vanilla sources.

5. Rather than only containing real vanilla, Dove Vanilla Ice Cream Bars contain non-vanilla flavors and vanilla enhancers which Defendant fails to disclose, contrary to the legal requirements and expectations of reasonable consumers.

6. Consumers can purchase the Product from retail and online stores of third-party sellers. The Product is sold in boxes of three (3) bars.

7. During the Class Period, Plaintiff purchased the Product in California.

8. Defendant falsely and misleadingly markets the Product to consumers as having a primary characterizing flavor of "Vanilla" that comes from vanilla beans, from the vanilla plant and tasting like vanilla.

9. In reality, not only does the Product contain undisclosed artificial vanilla flavors, but the Product contains less vanilla than what consumers expect and a taste dissimilar to vanilla.

10. Defendant charges a price premium for the Product.

11. Plaintiff seeks damages and an injunction to stop Defendant's false and misleading

2

marketing practices with regards to the Product.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

13.     The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

14.     Plaintiff seeks to represent a class of citizens of California.

15.     Defendant is a Delaware limited liability company with its principal place of business in Hackettstown, New Jersey. Upon information and belief, at least one member of Defendant is not a citizen of California.

16.     Diversity is established because under CAFA, members of the proposed class are citizens of California, while Defendant is not a citizen of California. 28 U.S.C § 1332(d)(2)(A).

17.     CAFA defines class members as "the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action." 28 U.S.C § 1332(d)(1)(D).

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events and misrepresentations giving rise to Plaintiff's claims occurred in this District, and Defendant (1) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets of this District through the promotion, marketing, distribution and sale of its products here, (2) resides in this District, and (3) is subject to personal jurisdiction in this District.

## PARTIES

19.     Plaintiff Molly Brown is a resident of the City of Novato and County of Marin, California.

20.     During the Class Period (as defined below), Plaintiff Brown purchased the Product

Class Action Complaint

for personal, family, and/or household use on occasions in California including but not necessarily limited to throughout 2019 and specifically in or around August 2019.

21.    Plaintiff Brown purchased the Product in-store at two different Safeway locations in Novato, California.

22.    Plaintiff would not have purchased or paid more for the Product had she realized that much, if not all, of the vanilla flavor came from non-vanilla plant sources.

23.    The front of the Product states "Vanilla Ice Cream" in large letters.

24.    Plaintiff relied upon this representation when she purchased the Product.

25.    Plaintiff believed that the vanilla flavor in the Product was exclusively and/or predominantly from vanilla beans in addition to vanilla plant sources.

26.    Plaintiff would not have purchased the Product had she understood the true flavor composition of the Product.

27.    Plaintiff would purchase the Product again in the future if the Product were remedied to reflect Defendant's labeling and marketing claims for it.

28.    Defendant is a Delaware limited liability company with its principal place of business in Hackettstown, Warren County, New Jersey and upon information and belief, at least one member of Defendant is not a citizen of California.

## **INTRADISTRICT ASSIGNMENT**

29.    Pursuant to Civil Local Rule 3-2(c-d), a substantial part of the events giving rise to the claims herein arose in Marin county, California and this action should be assigned to the San Francisco Division.

## **BACKGROUND**

30.    Mars Wrigley Confectionery US, LLC ("Defendant") manufactures, distributes, markets, labels and sells Vanilla Ice Cream Bars covered in milk chocolate.

4

31.     The front label reads "Vanilla Ice Cream With Milk Chocolate."



32.     The back labels reads "*Take a moment…to enjoy the rich flavor of vanilla ice cream dipped in silky smooth **DOVE** Milk Chocolate. **An experience like no other**.*"



33.     Contrary to the front label representations of "Vanilla," the Product is not flavored predominantly from vanilla beans or vanilla plant sources. In fact, the Product has no vanilla, or at most, a de minimis, or trace amount of vanilla.

34.     Instead, the Product is flavored mainly from ethyl vanillin and vanillin as well as non-vanilla sources, and as a result, does not taste like vanilla.

Class Action Complaint

35.     Vanilla (*Vanilla planifolia Andrews* and *Vanilla tahitenis Moore*) comes from an orchid plant that originated in Mexico where it was first cultivated.

36.     The fruit pod of the vanilla flower is the vanilla bean, which is the raw material for vanilla flavorings.

37.     The vanilla bean is heated in the sun, soaked in alcohol, and its flavor constituents extracted (vanilla extract).

38.     Vanilla's unique and complex flavor is due to the many odor-active compounds including acids, ethers, alcohols, acetals, heterocyclics, phenolics, hydrocarbons, esters and carbonyls, shown in the table below for a sample of vanilla extract.

39.     The popularity of vanilla in the 19th century led to the isolation of the most predominant flavor component, vanillin.

40.     However, vanillin separated from the rest of the vanilla bean does not constitute vanilla flavor.

41.     Sensory evaluation of vanillin is mainly sweet, with a lackluster "chemical-like" taste and odor because it lacks the other molecules in vanilla.

42.     Vanillin must be accompanied by other compounds to produce the familiar flavor and aroma consumers know as vanilla.

43.     The availability of low-cost vanillin resulted in foods purporting to contain vanilla, when in reality, they either contained no vanilla or a trace or de minimis amount, boosted by synthetic vanillin.

44.     Congress authorized regulations to prevent such deceptive labeling of foods flavored with vanilla, and for over fifty (50) years, most companies adhered to these industry standards.

45.     Further, consumer and industry groups have long sought to prevent this deception, where consumers are sold a food labeled as "vanilla" only to later discover that it lacks the richness

and layered taste that can only be provided by vanilla beans.

46.     The earliest effort to prevent fraud in vanilla products was the U.S. Pharmacopeia standard, which required a specific weight of vanilla beans as the source for vanilla extract.

47.     The focus was on the weight of actual vanilla beans, because this would prevent the addition of vanillin to a small amount of vanilla beans.

48.     Consumer deception continued through the first half of the 20th century, with companies labeling their foods as "vanilla" which were little more than vanillin with caramel coloring.

49.     This meant consumers were told where a product purported to be flavored as "vanilla" but contained a trace or de minimis amount of vanilla, boosted by vanillin, because it was labeled as imitation vanilla or artificially flavored.

50.     Consumers seek to avoid artificial flavors for health and nutrition purposes, because artificial flavors are highly processed with chemical additives in laboratories instead of made through simple techniques like alcohol extraction, which is used for vanilla extract.

51.     Nielsen has reported that 62% of consumers say they try to avoid artificial flavors.[1]

52.     New Hope Network concluded that 71% of consumers today are avoiding artificial flavors.[2]

53.     Label Insight determined that 76% of consumers avoid artificial flavors.[3]

54.     In 2018, in response to a surge in fraudulently labeled vanilla flavored foods, The Flavor and Extract Manufacturers Association of the United States ("FEMA") urged companies to return to truthfully labeling their vanilla foods so that consumers would not be misled by artificial

---

[1] Nielsen, Reaching For Real Ingredients: Avoiding The Artificial, Sept. 6, 2016.
[2] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019.
[3] Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018.

Class Action Complaint

vanilla flavors.[4]

## SPECIFIC MISREPRESENTATIONS,
## MATERIAL OMISSIONS, AND DECEPTIVE ACTS

### (Misleading and Deceptive "Vanilla" Labeling)

55.     A food is considered misbranded if "its labeling is false or misleading in any particular." 21 U.S.C. § 343(a).

56.     A food label contains numerous pieces of information including (1) a statement of identity and/or common or usual name, (2) a flavor designation and (3) an ingredient list.

57.     This labeling information is relied upon by consumers when choosing amongst various similar products.

58.     California has enacted regulations identical to those of the FDA for labeling foods.

59.     Vanilla ice cream is the #1 top selling flavor of ice cream, and when consumers purchase it, they expect it to be flavored with vanilla flavoring derived from vanilla beans unless labeled otherwise.

60.     According to John B. Hallagan and Joanna Drake, the legal advisors for The Flavor and Extract Manufacturers Association of the United States ("FEMA"):

> When consumers purchase ice cream labeled as "vanilla ice cream" they expect it to be flavored with vanilla flavoring derived from vanilla beans *unless labeled otherwise*. As we shall see, this expectation is codified in two U.S. federal standards of identity, one for vanilla flavorings and one for ice cream.[5] (emphasis added).

61.     Ice cream products that are solely labeled with the name of the flavor are considered "Category 1" and are expected to contain the flavor that is derived from/associated with the natural

---

[4] John B. Hallagan and Joanna Drake, FEMA, "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Vol. 43 at p. 46, Apr. 25, 2018 ("Hallagan & Drake"); FEMA is the trade group for the flavor industry.
[5] John B. Hallagan and Joanna Drake, The Flavor and Extract Manufacturers Association of the United States, "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Apr. 25, 2018.

Class Action Complaint

characterizing flavor, i.e., vanilla from vanilla beans. 21 C.F.R. §135.110(f)(2)(i) ("If the food contains no artificial flavor, the name on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., "vanilla", in letters not less than one-half the height of the letters used in the words "ice cream"").

62.     The International Dairy Foods Association summarized this unique distinction between natural and artificial flavors in the context of ice cream:

> Flavors which are derived from natural sources other than the characterizing flavor and simulate, resemble or reinforce the characterizing flavor, are considered artificial flavors. Products flavored in such a manner must be labeled according to either flavor labeling requirements of Category II or III products.

63.     Though the text of 21 C.F.R. §135.110(f)(2)(i) does not distinguish between flavor from the natural characterizing flavor and natural flavors from sources other than the characterizing flavor, the regulations for vanilla and ice cream products are supplemented by FDA Advisory Opinions and FDA-issued regulatory correspondence.

64.     The Product name – Vanilla Ice Cream – is false, misleading and unlawful because the Product does not get its flavoring only from vanilla beans, even though it implies otherwise.

65.     The Product's front label is represented as complying with 21 C.F.R. §135.110(f)(2)(i) ("Category 1") because it only mentions the "Vanilla" flavoring through the Product name.

66.     Laboratory analysis of the Product evidences that most of the vanilla flavor comes from non-vanilla plant sources.

67.     Distinguishing real vanilla from artificial vanilla is a challenging task, because every time a new high tech authentication method is adopted, "bad actors" find ways to "beat the test," such as artificial vanillin designed to contain isotopes that are present in real vanilla.

68.     Therefore, identifying the presence and amount of the following four vanilla marker compounds is valuable to authenticating vanilla:

9

| Compounds | Percent Present in Vanilla Beans |
|---|---|
| vanillin | 1.3-1.7 % |
| p-hydroxybenzaldehyde | 0.1% |
| vanillic acid | 0.05% |
| p-hydroxybenzoic acid | 0.03% |

69.     The testing of the Product did not reveal the presence of vanillic acid or p-hydroxybenzoic acid, which means it has, at most, a small amount of vanilla from vanilla beans:

Class Action Complaint

| MS Scan # | Area Integration | Peak Assignment | Conc. PPM w/w |
|---|---|---|---|
| 235 | 1017747 | diacetyl | 0.105 |
| 302 | 155690 | acetic acid | 0.016 |
| 367 | 360081 | propionic acid | 0.037 |
| 396 | 705016 | acetoin | 0.073 |
| 445 | 283387 | butyric acid | 0.029 |
| 475 | 1181612 | 1,3-butanediol | 0.122 |
| 487 | 61083 | methyl pyrazine | 0.006 |
| 495 | 678366 | furfural | 0.070 |
| 511 | 290158 | 3-methylbutyric acid | 0.030 |
| 521 | 123222 | 2-methylbutyric acid | 0.013 |
| 527 | 333280 | dimethyl sulfoxide (DMSO) | 0.034 |
| 538 | 223049 | furfuryl alcohol | 0.023 |
| 556 | 263073 | pentanoic acid | 0.027 |
| 575 | 516703 | 2-heptanone | 0.053 |
| 584 | 62673 | heptanal | 0.006 |
| 597 | 70826 | 2-acetyl furan | 0.007 |
| 604 | 229653 | 2,5-dimethylpyrazine | 0.024 |
| 612 | 3868480 | dimethyl sulfone + gamma-butyrolactone | 0.400 |
| 670 | 3166184 | benzaldehyde | 0.328 |
| 692 | 42656900 | hexanoic acid | 4.413 |
| 711 | 1417422 | trimethylpyrazine | 0.147 |
| 718 | 71039 | 2,4-heptadienal | 0.007 |
| 725 | 33351 | 1H-pyrrole-2-carboxaldehyde | 0.003 |
| 745 | 619854 | limonene | 0.064 |
| 753 | 807147 | benzyl alcohol | 0.084 |
| 764 | 57810 | 3-methyl-2(5H)-furanone | 0.006 |
| 786 | 1791928 | heptanoic acid + 2-acetylpyrrole | 0.185 |
| 792 | 1756747 | 2-ethyl-3,5-dimethylpyrazine | 0.182 |
| 802 | 2238902 | tetramethylpyrazine | 0.232 |
| 310 | 1377360 | guaiacol | 0.143 |
| 820 | 1565071 | octanoic acid | 0.162 |
| 827 | 1415812 | gamma-hexalactone | 0.146 |
| 843 | 773041 | phenylethyl alcohol | 0.080 |
| 862 | 886099 | maltol | 0.092 |
| 902 | 45935272 | octanoic acid | 4.752 |
| 906 | 492065 | benzoic acid | 0.051 |
| 919 | 135966 | 2-methoxy-4-methylphenol (p-creosol) | 0.014 |
| 923 | 118519 | decanal | 0.012 |
| 934 | 9665663 | naphthalene-d8 (internal standard) | 1.000 |
| 955 | 3564759 | hydroxy methyl furfural (HMF) | 0.369 |
| 984 | 21215736 | nonanoic acid | 2.195 |
| 1010 | 2582461 | glyceryl monobutyrate | 0.267 |
| 1021 | 971521 | 4-methoxybenzyl alcohol (p-anisyl alcohol) | 0.101 |
| 1040 | 265712 | 2,4-decadienal | 0.027 |
| 1087 | 68794548 | decanoic acid + some alpha-hydroxybenzeneacetic acid (Mandelic acid) | 7.117 |
| 1093 | 4243804 | p-hydroxybenzaldehyde | 0.439 |
| 1115 | 1455738 | methyl cinnamate | 0.151 |
| 1141 | 138436176 | vanillin | 14.322 |
| 1153 | 815807 | undecanoic acid | 0.084 |
| 1171 | 3259694 | vanillyl ethyl ether + 4-hydroxy-3-methoxybenzyl alcohol (vanillyl alcohol) | 0.337 |
| 1178 | 3375497 | ethyl vanillin | 0.349 |
| 1187 | 183575 | 2-dodecanone | 0.019 |
| 1194 | 27580 | acetovanillone | 0.003 |
| 1208 | 2258734 | delta-decalactone | 0.234 |
| 1241 | 16654339 | lauric acid | 1.723 |
| 1352 | 773473 | gamma-dodecalactone | 0.080 |
| 1381 | 2917436 | delta-dodecalactone | 0.302 |
| 1397 | 1601570 | myristic acid | 0.166 |
| 1526 | 253556 | caffeine | 0.026 |
| 1585 | 937011 | delta-tetradecalactone | 0.097 |
| | | **Total (excluding internal standard)** | **40.590** |

70.     Moreover, the fact that the Product has elevated levels of vanillin (14.322 PPM) further proves that the vanillin is from non-vanilla bean sources, which include ferulic acid or wood pulp (lignin).

71.     The absence of detectable levels of p-hydroxybenzoic acid and vanillic acid, coupled

11

with high vanillin levels, indicates this vanillin is not real vanilla from the vanilla plant, which deceives consumers.

72.     Together with the high levels of vanillin, the conclusion is that it is not made only with vanilla extract.

73.     The predominant flavoring in the Product comes from artificial flavors not disclosed to consumers – ethyl vanillin, vanillin, and maltol. 21 C.F.R. § 172.515(b), 21 C.F.R. § 182.60 ("Synthetic flavoring substances and adjuvants.").

74.     The Product contains maltol, a compound not found in vanilla beans, but is used to enhance the flavor and aroma of vanilla flavored foods.

75.     Maltol is used to increase sweetness, despite the fact that vanilla's mild sweetness is appreciated on its own and added sweetness detracts from the vanilla taste desired by consumers.

76.     Ethyl vanillin (0.349 PPM) does not come from the vanilla plant and is an inferior substitute for vanilla.

77.     Ethyl vanillin is at least four times more potent than vanillin and is made from lignin, which is part of the pulp from tree processing.

78.     Like ethyl vanillin, vanillin has a harsh, synthetic taste when separated from the rest of the vanilla flavor compounds.

79.     Because vanillin is responsible for between one-quarter (25%) and one-third (33%) of the overall flavor/aroma impact of vanilla, the added ethyl vanillin and vanillin skew the balance of the vanilla flavor compounds, and the result is dissimilar to what consumers expect from vanilla beans.

80.     That the Product contains non-vanilla flavors can also be concluded by experts in the field of food labeling (but not the reasonable consumer) from the back panel:

12

Class Action Complaint

**INGREDIENTS: ICE CREAM:** SKIM MILK, CREAM, SUGAR, CORN SYRUP, MONO AND DIGLYCERIDES, CARRAGEENAN, CAROB BEAN GUM, GUAR GUM, NATURAL FLAVOR, BETA CAROTENE. **COATING:** MILK CHOCOLATE (SUGAR, COCOA BUTTER, SKIM MILK, CHOCOLATE, LACTOSE, MILKFAT, SOY LECITHIN, ARTIFICIAL FLAVOR), SEMISWEET CHOCOLATE (SUGAR, CHOCOLATE, CHOCOLATE PROCESSED WITH ALKALI, COCOA BUTTER, MILKFAT, SOY LECITHIN, ARTIFICIAL AND NATURAL FLAVORS), COCONUT OIL, PALM OIL. ⓤD

**INGREDIENTS: ICE CREAM:** SKIM MILK, CREAM, SUGAR, CORN SYRUP, MONO AND DIGLYCERIDES, CAROB BEAN GUM, GUAR GUM, CARRAGEENAN, NATURAL FLAVOR, BETA CAROTENE

81.     The International Dairy Foods Association ("IDFA") advises that vanilla ice cream should only contain flavoring from vanilla beans, *viz*, vanilla extract on the ingredient list.

82.     The Flavor and Extract Manufacturers Association of the United States ("FEMA") has also stated that vanilla ice cream is required to be flavored only with flavoring from vanilla beans – indicated as vanilla extract on the ingredient list.

83.     According to an article on Yahoo Food in 2015, "The One Thing You Need to Know When Buying Vanilla Ice Cream," "Brands that print phrases like 'natural vanilla' [or 'natural flavor'] on their packages may actually be pushing products that contain anything but."[6]

84.     The Yahoo article continued, "Vanilla extract is the key to buying ice cream with good vanilla flavor…If it doesn't say vanilla extract, walk on by" because the vanilla "taste" is "actually imitation extract made from wood pulp."[7]

85.     Dairy expert "Scott Rankin, a professor of food science at the University of Wisconsin-Madison, explained that the different wordings on the labels amount to an industry shorthand for specific kinds of natural or artificial flavorings."

86.     For instance, "natural vanilla flavor" often refers to "vanillin extracted from wood."

---

[6] Yahoo Food, The One Thing You Need to Know When Buying Vanilla Ice Cream, May 20, 2015.
[7] See 21 C.F.R. §135.110(f)(2)(i) ("If the food contains no artificial flavor, the name on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., 'vanilla'").

Class Action Complaint

87.     "Natural flavor" on the other hand, "(with no mention of vanilla at all) indicates just a trace of natural vanilla (there's no required level) and other flavorings such as nutmeg that merely trigger an association with vanilla."

88.     The common or usual name for vanilla is vanilla extract and not natural flavor.

89.     As FEMA indicated, consumers are especially misled in this scenario because the term "natural flavor" fails to disclose that the Product does not refer to a natural vanilla flavor.

90.     "Natural Flavor" on the ingredient list fails to clarify the misleading front label representation because consumers are unable to know how much vanilla, if any, is part of the "Natural Flavor" ingredient.

91.     The flavor compound analysis displaying results of flavors not found in vanilla and flavors used to enhance vanilla (i.e., maltol, vanillin, ethyl vanillin) in addition to the ingredient list not specifying vanilla extract, further supports the conclusion that the Product contains non-vanilla artificial flavors that give the fake impression of more vanilla.

92.     The Product is misrepresented as "Vanilla Ice Cream" and its ingredient list concedes that it does not only contain vanilla flavor from the vanilla plant.

93.     Assuming the Product contains a small amount of vanilla, this is its "natural characterizing flavor."

94.     However, the laboratory analysis shows that "the artificial flavor predominates" because the vanillin levels appear much greater than 1 ounce per unit of vanilla constituent.  *See* 21 C.FR. §135.110(f)(2)(iii) ("If the food contains both a natural characterizing flavor and an artificial flavor simulating it, and if the artificial flavor predominates"); *see also* C.F.R. §135.110(f)(5)(i) ("An artificial flavor simulating the characterizing flavor shall be deemed to predominate: (i) In the case of vanilla beans or vanilla extract used in combination with vanillin if the amount of vanillin used is greater than 1 ounce per unit of vanilla constituent").

14

95.     Due to the artificial vanilla flavor predominating, the Product is required to be labeled as "artificial vanilla" or "artificially flavored vanilla." *See* 21 C.FR. §135.110(f)(2)(iii).

96.     Even if the amount of vanillin was not "greater than 1 ounce per unit of vanilla constituent," the Product would still be required to say "artificial vanilla" because it contains maltol and ethyl vanillin, flavors from non-vanilla bean sources, which simulate, resemble, and reinforce the vanilla flavor.

97.     Reasonable consumers are not aware of the distinction between natural and artificial flavors unique to ice cream products and are therefore misled to expect all the flavor is from vanilla beans.

98.     By omitting "artificially flavored" from the front label, consumers are not told that the taste is derived from added vanillin.

99.     By using the term "naturally flavored" on the front label, consumers are led to believe that the Product has a vanilla taste from vanilla ingredients.

100.    The ingredient listing of "Natural Flavor" is misleading because it does not identify vanillin as an ingredient, nor does it disclose the presence of artificial flavors such as vanillin and/or ethyl vanillin.

101.    Vanillin and ethyl vanillin cannot provide vanilla flavor because they lack the above-described odor-active compounds present in vanilla.

102.    Even though the Product purports to contain vanilla, the amount of vanillin relative to the other compounds results in a taste dissimilar to vanilla.

103.    The Product's flavoring lacks the complexity and flavor notes associated with vanilla because vanillin has never been synonymous with vanilla.

104.    Defendant knows consumers will pay more for the Product because the front label states "Vanilla" instead of "artificially flavored" or "does not taste like real vanilla."

15

105.    Defendant's omission and failure to disclose these facts is deceptive and misleading to consumers who want a vanilla flavored product that 1. contains flavoring mainly from vanilla beans and 2. tastes like vanilla.

106.    Because the Product contains added artificial vanilla flavors, the ingredient list should indicate "natural and artificial flavors."

107.    Consumers are entitled to know whether or not the product they are purchasing is flavored with a vanilla flavoring derived from vanilla beans, in whole or in part.

108.    Consumers prefer flavor from vanilla beans over artificial vanilla flavor due to taste and health, and because vanilla is a natural product, compared to highly processed artificial vanilla flavorings with additives.

109.    Defendant's marketing and promotion of the Product is designed to – and does – deceive, mislead, and defraud Plaintiff and consumers.

110.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

111.    The value of the Product that Plaintiff purchased and consumed was materially less than its value as represented by Defendant.

112.    Had Plaintiff and the proposed class members known the truth, they would not have bought the Product or would have paid less for it.

113.    As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $5.99 for a box of three (3) Ice Cream Bars, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it was to be represented in a non-misleading way.

**Reliance and Economic Injury**

114.    When purchasing the Product, Plaintiff sought a product with a materially greater

16

amount of vanilla than it actually contained.

115.     When purchasing the Product, Plaintiff sought a product that was natural in that its vanilla flavor was provided exclusively by vanilla beans.

116.     Plaintiff read and relied on Defendant's false and misleading representations including the product name, its statements, and its statement of identity and misleading claims in its labeling and advertising of the Product.

117.     Plaintiff also saw and relied on statements found on the packaging of the Product, which misleadingly references "Vanilla" even though much, if not all, of the vanilla flavoring comes from non-vanilla sources.

118.     Plaintiff purchased the Product, and paid more for it than she would have otherwise paid believing the Product had qualities she specifically sought (e.g., only vanilla flavor from vanilla beans from the vanilla plant) based on the misleading labeling, advertising, and marketing; but the Product was unsatisfactory to her because those representations were false and misleading.

119.     The Product costs significantly more per ounce compared to other similar products which lack prominent and unqualified front label claims of "Vanilla."

120.     Plaintiff paid more for the Product than she would have otherwise paid had she not been misled by the false, misleading, and deceptive labeling, marketing, and advertising complained of herein.

121.     For these reasons, the Product was worth less than what Plaintiff paid for it.

122.     Plaintiff lost money as a result of Defendant's deception in that Plaintiff did not receive what she paid for.

123.     Plaintiff altered her position to her detriment and suffered damages in an amount equal to the amount she paid for the Product.

124.     By engaging in its misleading and deceptive marketing, sales and pricing scheme,

Class Action Complaint

1  Defendant reaped and continues to reap increased sales and profits.

2  <u>**CLASS ACTION ALLEGATIONS**</u>

3
4  125.   Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules

5  of Civil Procedure. Specifically, the Class is defined as follows:

6  > All persons residing in California who purchased the Product for their own use
   > (which includes feeding their families), and not for resale, since November 9, 2014.

7
8  126.   Excluded from the Class are: governmental entities; Defendant; any entity in which

9  Defendant has a controlling interest; Defendant's officers, directors, affiliates, legal representatives,

10 employees, co-conspirators, successors, subsidiaries, and assigns; and, any judge, justice, or judicial

11 officer presiding over this matter and the members of their immediate families and judicial staff.

12 127.   For the purposes of this Complaint, the term "Class Members" refers to all members

13 of the Class, including the Plaintiff.

14 128.   Plaintiff reserves the right to amend the definition of the Class if discovery or further

15 investigation reveals that the Class should be expanded or otherwise modified.

16
17 129.   This action is maintainable as a class action under Federal Rules of Civil Procedure

18 Rule 23(a), and (b)(2) and (b)(3).

19 130.   Numerosity.  The Class consists of thousands of persons throughout California.  The

20 Class is so numerous that joinder of all members is impracticable, and the disposition of their claims

21 in a class action will benefit the parties and the Court.

22 131.   Commonality and Predominance.  The questions of law and fact common to the Class

23 have the capacity to generate common answers that will drive resolution of this action.  They

24 predominate over any questions affecting only individual class members.  Common questions of

25 law and fact include, but are not limited to, the following:

26
27 i.   Whether Defendant contributed to, committed, or is responsible for the conduct

28

alleged herein;

ii.      Whether Defendant promoted the Product with false and misleading statements of fact and/or material omissions;

iii.     Whether Defendant's marketing, advertising, packaging, labeling, and/or other promotional materials for the Product are deceptive, unfair or misleading;

iv.      Whether Defendant's conduct constitutes the violations of law alleged herein;

v.       Whether Defendant acted willfully, recklessly, negligently, or with gross negligence in the violations of the laws alleged herein;

vi.      Whether Class Members are entitled to injunctive relief; and

vii.     Whether Class Members are entitled to restitution and damages.

132.    By seeing the name, labeling, display, and marketing of the Product, and by purchasing the Product, all Class Members were subject to the same wrongful conduct.

133.    Absent Defendant's material deceptions, misstatements and omissions, Plaintiff and other Class Members would not have purchased the Product.

134.    Typicality.    Plaintiff's claims are typical of the claims of the proposed Class, respectively, because she purchased the Product and was injured thereby.  The claims of Plaintiff and the proposed Class Members are based on the same legal theories and arise from the same false, misleading, and unlawful conduct.

135.    Adequacy.  Plaintiff is an adequate representative of the proposed Class because her interests do not conflict with those of the proposed Class Members.  Each proposed Class Member is entitled to damages reflecting a similar and discrete purchase or purchases that each proposed Class Member made.  Plaintiff has retained competent and experienced class action counsel, who intend to prosecute this action vigorously.  The proposed Class Members' interests will be fairly and adequately protected by Plaintiff and her counsel.

136.    Superiority.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all proposed Class Members is impracticable.  The amount at stake for each consumer, while significant, is such that individual litigation would be inefficient and cost-prohibitive. Plaintiff anticipates no difficulty in the management of this action as a class action.

137.    This Court should certify the Class under Rule 23(b)(2) and (b)(3) because Defendant has acted or refused to act on grounds that apply generally to the proposed Class, by making illegal, unfair, misleading, and deceptive representations and omissions regarding the Product.

138.    Notice to the Class.  Plaintiff anticipates that this Court can direct notice to the Class, to be effectuated by publication in major media outlets and the Internet.

## CLAIMS FOR RELIEF

### FIRST CLAIM
**(Violation of California Business & Professions Code §§ 17200 *et seq.* –**
**Unlawful Conduct Prong of the "UCL")**
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

139.    Plaintiff incorporates by reference all allegations contained in the complaint as if fully set forth herein. California Business & Professions Code section 17200 ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice."

140.    The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant, as alleged herein, constitute "unlawful" business acts and practices in that they violate the Federal Food, Drug, and Cosmetic Act ("FFDCA") and its implementing regulations, including, at least, the following sections:

      i.    21 U.S.C. § 343, which deems food misbranded when the label contains a statement that is "false or misleading in any particular," with "misleading" defined to "take[] into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material";

ii.     21 U.S.C. § 321(n), which states the nature of a false and misleading advertisement;

iii.    21 C.F.R. § 101.18(b), which prohibits true statements about ingredients that are misleading in light of the presence of other ingredients;

iv.    21 C.F.R. Part 169, Food Dressings and Flavorings;

v.     21 C.F.R. § 135 which sets forth a framework to truthfully identify the source of an ice cream product's flavor; and

vi.    21 C.F.R. § 102.5 which prohibits misleading common or usual names.

141.    Defendant's conduct is further "unlawful" because it violates the California False Advertising Law ("FAL") and the Consumer Legal Remedies Act ("CLRA"), as discussed in the claims below.

142.    Defendant's conduct also violates the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code section 109875, *et seq*. ("Sherman Law"), including, at least, the following sections:

i.     Section 110100 (adopting all FDA regulations as state regulations);

ii.     Section 110290 ("In determining whether the labeling or advertisement of a food … is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account. The extent that the labeling or advertising fails to reveal facts concerning the food … or consequences of customary use of the food … shall also be considered.");

iii.    Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food…. An advertisement is false if it is false or misleading in any particular.");

iv.    Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food … that is falsely advertised.");

v.     Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

vi.    Section 110400 ("It is unlawful for any person to receive in commerce any food … that is falsely advertised or to deliver or proffer for delivery any such food…."); and

vii.   Section 110660 ("Any food is misbranded if its labeling is false or misleading in

21

1    any particular.").

2    143.    Each of the challenged statements made and actions taken by Defendant violates the

3    FFDCA, the CLRA, the FAL, and the Sherman Law, and therefore violates the "unlawful" prong of

4    the UCL.

5    144.    Defendant leveraged its deception to induce Plaintiff and members of the proposed

6    Class to purchase products that were of a lesser value and quality than as advertised and promised.

7    Defendant's deceptive advertising caused Plaintiff  and members of the proposed Class to suffer

8    injury in fact and to lose money or property, as it denied them the benefit of the bargain when they

9    decided to purchase the Product over other products that are less expensive, and contain virtually

10    the same or immaterially different amounts of vanilla.

11    145.    Had Plaintiff and the members of the proposed Class been aware of Defendant's false

12    and misleading advertising tactics, they would not have purchased the Product at all or would have

13    paid less than what they did for it.

14    146.    In accordance with California Business & Professions Code section 17203, Plaintiff

15    seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair,

16    and/or fraudulent acts and practices and to commence a corrective advertising campaign.

17    147.    Plaintiff also seeks an order for the disgorgement and restitution of all monies from

18    the sale of the Product that was unjustly acquired through acts of unlawful, unfair and/or fraudulent

19    competition.

**SECOND CLAIM**
**(Violation of California Business & Professions Code §§ 17200, *et seq*. –**
**Unfair and Fraudulent Conduct Prong of the "UCL")**
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

148.    Plaintiff incorporates by reference all of the allegations of the preceding paragraphs

as if fully set forth herein.

Class Action Complaint

149.   California Business & Professions Code section 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

150.   The false and misleading labeling of the Product, as alleged herein, constitutes "unfair" business acts and practices because such conduct is immoral, unscrupulous, and offends public policy.   Further, the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct.

151.   The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute "fraudulent" business acts and practices, because Defendant's conduct is false and misleading to Plaintiff and members of the proposed Class.

152.   Defendant's labeling and marketing of the Product is likely to deceive proposed Class Members about the flavoring source and amount of vanilla in the Product.

153.   Defendant either knew or reasonably should have known that the claims and statements on the packaging and labels of the Product were likely to deceive consumers.

154.   In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

155.   Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of the Product that were unjustly acquired through acts of unlawful, unfair and/or fraudulent competition.

**THIRD CLAIM**
**(Violation of California Business & Professions Code §§ 17500, *et seq.* –**
**False and Misleading Advertising ("FAL"))**
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

156.   Plaintiff incorporates by reference all allegations contained in the complaint as if fully set forth herein.

157.   California False Advertising Law (Cal. Business & Professions Code sections 17500

23

and 17508) prohibits "mak[ing] any false or misleading advertising claim."

158.    As alleged herein, Defendant, in its labeling of the Product, makes "false [and] misleading advertising claim[s]," as it deceives consumers as to the flavor composition, source of the flavor, and the amount of vanilla included in the Product.

159.    In reliance on these false and misleading advertising claims, Plaintiff and members of the proposed Class purchased and used the Product without the knowledge that the Product did not get its vanilla taste from vanilla beans.

160.    Defendant knew or should have known that its labeling and marketing was likely to deceive consumers.

161.    As a result, Plaintiff and the proposed Class are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

## FOURTH CLAIM
### Violation of California's Consumer Legal Remedies Act
### Cal. Civ. Code § 1750 *et seq.* ("CLRA")
### (ON BEHALF OF PLAINTIFF AND THE CLASS)

162.    Plaintiff incorporates by reference all allegations contained in the complaint as if fully set forth herein.

163.    The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

164.    Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Product for personal, family, or household purposes by Plaintiff and Class Members, and violated and continues to violate the following sections of the CLRA:

    i.    § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

ii. § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

iii. § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

iv. § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

165. Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Product to unwary consumers.

166. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

167. Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff will provide a letter to Defendant concurrently with the filing of this Complaint or shortly thereafter with notice of its alleged violations of the CLRA, demanding that Defendant correct such violations, and providing it with the opportunity to correct its business practices. If Defendant does not thereafter correct its business practices, Plaintiff will amend (or seek leave to amend) the complaint to add claims for monetary relief, including restitution and actual damages under the Consumers Legal Remedies Act.

168. Pursuant to California Civil Code § 1780, Plaintiff seeks injunctive relief, her reasonable attorney fees and costs, and any other relief that the Court deems proper.

**FIFTH CLAIM**
**Breach of Express Warranties**
**Cal. Com. Code § 2313(1)**
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

169. Plaintiff incorporates by reference all allegations contained in the complaint as if fully set forth herein.

170. The Product was manufactured, labeled and sold by Defendant or at its express directions and instructions, and warranted to Plaintiff and proposed Class Members that it possessed substantive, quality, compositional and/or environmental which it did not.

25

171.    Through the Product's labels and advertising, Defendant made affirmations of fact or promises, or description of goods, described above, which were "part of the basis of the bargain," in that Plaintiff and the Class purchased the Product in reasonable reliance on those statements. Cal. Com. Code § 2313(1).

172.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

173.    Defendant breached the express warranties by selling a Product that does not and cannot provide the promised benefits and moreover by selling a Product that is misrepresented because not only does it contain undisclosed artificial vanilla flavors, but it contains less vanilla than what consumers expect, including a taste dissimilar to vanilla.

174.    Plaintiff and the Class Members would not have purchased the Product had they known the true nature of the Product's ingredients and that the Product contains non-vanilla flavors and vanilla enhancers rather than real vanilla.

175.    That breach actually and proximately caused injury in the form of the lost purchase price that Plaintiff and Class members paid for the Product.

176.    Concurrently with the filing of this Complaint, Plaintiff Brown mailed a notice letter to Defendant Mars Wrigley Confectionery US, LLC. The letter was sent on behalf of Plaintiff and all other persons similarly situated.

177.    As a result of Defendant's breach of warranty, Plaintiff and Class Members have been damaged in the amount of the purchase price of the Product and any consequential damages resulting from the purchases.

178.    Plaintiff and proposed Class Members would not have purchased the Product or paid as much as they did if the true facts had been known, suffering damages.

### SIXTH CLAIM
**Breach of Implied Warranty of Merchantability**
**Cal. Com. Code § 2314**
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

179.    Plaintiff incorporates by reference all allegations contained in the complaint incorporates by reference all allegations contained in the complaint as if fully set forth herein.

180.    Defendant, through its acts and omissions set forth herein, in the sale, marketing, and promotion of the Product, made representations to Plaintiff and the Class that, among other things, has a primary characterizing flavor of "Vanilla" that comes from vanilla beans, from the vanilla plant and tastes like vanilla.

181.    Plaintiff and the Class bought the Product manufactured, advertised, and sold by Defendant, as described herein.

182.    Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class, and there was, in the sale to Plaintiff and other consumers, an implied warranty that those goods were merchantable.

183.    However, Defendant breached that implied warranty in that the Product does not provide the benefits represented by Defendant, as set forth in detail herein, and in reality, contains non-vanilla flavors and vanilla enhancers rather than real vanilla.

184.    Concurrently with the filing of this Complaint, Plaintiff Brown mailed a notice letter to Defendant Mars Wrigley Confectionery US, LLC. The letter was sent on behalf of Plaintiff and all other persons similarly situated.

185.    As an actual and proximate result of Defendant's conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that they did not conform to promises and affirmations made on the container or label of the goods nor are they fit for their ordinary purpose of providing the benefits as promised.

186.    Plaintiff and the Class have sustained damages as a proximate result of the foregoing

27

breach of implied warranty in the amount of the Product's purchase price.

### SEVENTH CLAIM
**Fraud**
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

187.    Plaintiff incorporates by reference all allegations contained in the complaint incorporates by reference all allegations contained in the complaint as if fully set forth herein.

188.    As alleged herein, Defendant knowingly made material misrepresentations and omissions regarding the Product on the Product's labeling and packaging in the Product's advertisements, and/or on its website.

189.    Defendant made these material misrepresentations and omissions in order to induce Plaintiff and putative Class Members to purchase the Product. Specifically, the amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product. Therefore, consumers do not expect non-vanilla flavors where/when a product's characterizing flavor is blatantly labeled "vanilla."

190.    Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on front label and/or the ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

191.    Rather than inform consumers that the Product contained artificial vanilla flavors and vanilla enhancers , and that the vanilla flavor was not from vanilla beans or vanilla plant sources, Defendant claims in marketing materials and its marketing campaign for the Product that the Product does in fact get its flavoring only from vanilla beans in order to mislead consumers that the Product has a "Natural flavor".

192.    Plaintiff and proposed Class Members would not have purchased the Product or paid as much as they did if the true facts had been known, suffering damages.

193.    Defendant knew that the Product contained non-vanilla artificial flavors and vanilla

enhancers (i.e., maltol, vanillin, ethyl vanillin) and did not provide a predominating real vanilla flavor, but nevertheless made such representations through the marketing, advertising and on the Product's labeling. In reliance on these and other similar misrepresentations, Plaintiff and putative Class Members were induced to, and did, pay monies to purchase the Product.

194.    Had Plaintiff and the Class known the truth about the Product, they would not have purchased the Product.

195.    As a proximate result of the fraudulent conduct of Defendant, Plaintiff and the putative Class paid monies to Defendant, through its regular retail sales channels, to which Defendant is not entitled, and have been damaged in an amount to be proven at trial.

### EIGHTH CLAIM
**Unjust Enrichment**
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

196.    Plaintiff incorporates by reference all allegations contained in the complaint as if fully set forth herein.

197.    Plaintiff and putative Class Members conferred a benefit on Defendant when they purchased the Product. By its wrongful acts and omissions described herein, including misrepresenting the amount and proportion of the characterizing component, vanilla, in the Product, and selling the misrepresented Product that did not otherwise perform as represented and for the particular purpose for which it was intended, Defendant was unjustly enriched at the expense of Plaintiff and putative Class Members.

198.    Plaintiff's detriment and Defendant's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

199.    Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and putative Class Members under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit. It would be inequitable for Defendant to

retain the profits, benefits, and other compensation obtained from their wrongful conduct as described herein in connection with selling the misrepresented Product.

200.    Defendant has been unjustly enriched in retaining the revenues derived from Class Members' purchases of the Product, which retention of such revenues under these circumstances is unjust and inequitable because Defendant manufactured, sold, misrepresented the nature of the Product, misrepresented its ingredients, and knowingly marketed and promoted a Product with a false, misleading, and deceptive Product label, which caused injuries to Plaintiff and the putative Class Members because they would not have purchased the Product based on the same representations if the true facts concerning the Product had been known.

201.    Plaintiff and putative Class Members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the Product on the same terms or for the same price had they known the true nature of the Product and the mis-statements regarding what the Product was and what it contained.

202.    Defendant either knew or should have known that payments rendered by Plaintiff and putative Class Members were given and received with the expectation that the Product actually contained vanilla as represented by Defendant in advertising and on the Product's labels and packaging. It is inequitable for Defendant to retain the benefit of payments under these circumstances.

203.    Plaintiff and putative Class Members are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

204.    When required, Plaintiff and putative Class Members are in privity with Defendant because Defendant's sale of the Product was either direct or through authorized sellers. Purchase through authorized sellers is sufficient to create such privity because such authorized sellers are Defendant's agents for the purpose of the sale of the Product.

Class Action Complaint

205. As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for its inequitable and unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and other members of the proposed Class herein, prays for judgment and relief on all of the legal claims as follows:

A.  Certification of the Class, certifying Plaintiff as representative of the Class, and appointing Plaintiff's counsel as Class Counsel;

B.  A declaration that Defendant has committed the violations alleged herein;

C.  For restitution and disgorgement pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq.* and Cal Civ. Code § 1780, except for no monetary damages under the CLRA;

D.  For declaratory and injunctive relief pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq*. and 17500, *et seq* ;

E.  For damages, declaratory and injunctive relief pursuant to California Civil Code § 1780, except for no monetary damages under the CLRA;

F.  An award of compensatory damages, the amount of which is to be determined at trial, except for no monetary damages under the CLRA;

G.  For punitive damages;

H.  For interest at the legal rate on the foregoing sums;

I.  For attorneys' fees;

J.  For an Order directing that Defendant bear the costs of any notice sent to the Class;

K.  For costs of suit incurred; and

L.  For such further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all causes of action so triable.

Class Action Complaint

Dated:  November 24, 2020

Respectfully Submitted By:

**SHUB LAW FIRM LLC**

*/s/ Jonathan Shub*
Jonathan Shub (State Bar No. 237708)
*jshub@shublawyers.com*

Kevin Laukaitis (Pro Hac Vice to file)
*klaukaitis@shublawyers.com*
134 Kings Highway E Fl 2
Haddonfield, NJ 08033
Telephone: (856) 772-7200
Facsimile: (856) 210-9088

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan (Pro Hac Vice to file)
spencer@spencersheehan.com
60 Cuttermill Rd Ste 409
Great Neck, NY 11021
Telephone:  (516) 268-7080
Facsimile:   (516) 234-7800

**GREG COLEMAN LAW PC**
Alex Straus (State Bar No. 321366)
*alex@gregcolemanlaw.com*
16748 McCormick Street
Los Angeles, CA 91436
Telephone: (310) 450-9689
Facsimile: (310) 496-3176

*Counsel for Plaintiff and the Proposed Class*

Class Action Complaint

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, Jonathan Shub, declare as follows:

1. I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am an attorney at Shub Law Firm LLC, counsel of record for Plaintiff in this action. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2. The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California. I declare under the penalty of perjury under the laws of the State of New Jersey and/or California and the United States that the foregoing is true and correct and that this declaration was executed in Haddonfield, New Jersey this 24th day of November, 2020.

*/s/ Jonathan Shub*
Jonathan Shub

Class Action Complaint